UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**RACHEL KELTY,**

    **Plaintiff,**

  v.                                  Case No. 18-CV-762

**JOHN M. PATTERSON,
MICHAEL BEDNAREK, and
SARAH COOPER,**

    **Defendants.**

---

### REPORT AND RECOMMENDATION ON PLAINTIFF'S REQUEST FOR AN AWARD OF REASONABLE ATTORNEY'S FEES AND COSTS

---

On June 10, 2019, I submitted a report and recommendation that Rachel Kelty's motion for default judgment against defendant John M. Patterson be granted, with compensatory and punitive damages totaling $2.4 million. (Docket # 26.) I deferred making a recommendation on counsel's request for attorney's fees and costs, ordering counsel to submit information demonstrating the reasonableness of the requested amounts. (*Id.* at 16.) On June 20, 2019, Attorney Matthew Pinix filed the requested supplement. (Docket # 37.)

    1. *Legal Standard*

Section 1988(b) of Title 42 provides that in any action to enforce a provision of § 1983, the court, in its discretion, may allow the prevailing party a reasonable attorney's fee. "A person is considered to be a prevailing party only if he receives 'some relief on the merits of his claim.'" *Mounson v. Moore*, 117 F. App'x 461, 462 (7th Cir. 2004) (quoting *Farrar v. Hobby*, 506 U.S. 103, 111 (1992)). In other words, a prevailing party is one who "'obtain[s] an

enforceable judgment against the defendant from whom fees are sought.'" *Id*. (quoting *Farrar*, 506 U.S. at 111).

The general rule for calculating attorney's fees awards under fee-shifting statutes is applicable here. The starting point for determining reasonable attorney's fees is the lodestar, which is calculated by multiplying the number of hours reasonably expended by the reasonable hourly rate. *Johnson v. GDF, Inc.*, 668 F.3d 927, 929 (7th Cir. 2012). There is a "strong presumption that the lodestar represents the reasonable fee." *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992) (internal quotation marks omitted); *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 639 (7th Cir. 2011). However, once the lodestar is determined, the court may adjust the fee upward or downward based on a variety of factors, the most important of which is the degree of success obtained. *Hensley v. Eckerhart*, 461 U.S. 424, 430 n.3, 436 (1983). Other factors to be considered include:

> (1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the plaintiff's attorney; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Tolentino v. Friedman*, 45 F.3d 645, 652 (7th Cir. 1995) (citing *Hensley*, 461 U.S. at 441). In sum, "[t]he standard is whether the fees are reasonable in relation to the difficulty, stakes, and outcome of the case." *Connolly v. Nat'l Sch. Bus Serv., Inc.*, 177 F.3d 593, 597 (7th Cir. 1999). The fee applicant bears the burden of "produc[ing] satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community." *Id*. (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). If the fee applicant

satisfies this burden, the burden shifts to the other party to offer evidence that sets forth "a good reason why a lower rate is essential." *Id.* (internal quotation and citations omitted).

   2. *Calculating the Lodestar*

Attorney Pinix seeks fees for three attorneys, himself and two others from his office. He requests a rate of $350 per hour multiplied by 45 hours for himself (totaling $15,750), 1.1 hours for Attorney Michael G. Soukup (totaling $385.00), and 0.9 hours for Attorney Rebecca R. Lawnicki (totaling $315.00). (Docket # 35 at 2, 35-2, 35-3.)

      2.1.   Reasonable Hours Worked

In calculating the reasonable hours worked, I must first determine the actual time Kelty's attorneys spent on her claim against Patterson. "Where the hours spent on successful claims can easily be distinguished from those spent on unsuccessful claims, the court can simply strike the latter entries when computing the lodestar." *Montanez v. Simon*, 755 F.3d 547, 553 (7th Cir. 2014); *see also Muscare v. J. Quinn*, 614 F.2d 577, 580–81 (7th Cir. 1980) (the court can only consider the time spent on issues upon which the plaintiff prevailed).

Kelty filed her complaint against the defendants on May 18, 2018. (Docket # 1.) After Patterson neither appeared nor responded to her complaint, Kelty requested an entry of default against Patterson on June 26, 2018. (Docket # 10.) After settling matters with the other defendants, Kelty moved for an entry of default judgment against Patterson on February 6, 2019 (Docket # 28), and has been litigating towards entry of that judgment since. Thus, the timeline for attorney's fees and costs would properly include 1) the reasonable hours worked from the initiation of Kelty's lawsuit to the time of the entry of default against Patterson and 2) the reasonable hours worked from the time of her filing the motion for default judgment against Patterson to the present.

3

Attorney Pinix attached to his declaration for attorney's fees and costs copies of the fee agreement signed by Kelty on January 3, 2018 (Docket # 35-1 at 9) and the time entries for the attorneys' work associated with Kelty's case (Docket # 35-2, 35-3). Notably, the time sheets coincide with the timeline I found appropriate. The dates span February 2, 2018 to June 13, 2018 and February 6, 2019 to April 10, 2019. (Docket # 35-2, 35-3.) Thus, I do not need to exclude any of the time based on it being outside the proper time frame.

I next determine whether any of the noted hours worked were "excessive, redundant, or otherwise unnecessary." *Johnson*, 668 F.3d at 929 (quoting *Hensley*, 461 U.S. at 434). Attorney Pinix asserts that the three attorneys, but mostly him, worked a total of 47 hours on Kelty's case. Included in these hours are entries for complaint drafting, reviewing, and editing; telephonic meetings with Kelty; research and review of a police report and Patterson's court file; research and review of Kelty's incarceration and medical records; and preparing for Kelty's damages hearing. (Docket # 35-2, 35-3.) None of this work appears excessive, redundant, or otherwise unnecessary. In most cases, the entries do not exceed half an hour and describe activities necessary for litigating Kelty's case with the kind of professionalism and mastery of the facts Attorney Pinix displayed at the hearing. Thus, I find all 47 of the hours reasonable.

2.2.  Reasonable Hourly Rate

Next, I must determine the reasonable hourly rate for Attorneys Pinix, Soukup, and Lawnicki. A reasonable hourly rate is "'the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question.'" *Spegon v. Catholic Bishop of Chicago*, 175 F. 3d 544, 555 (7th Cir. 1999) (quoting *Bankston v. State of Illinois*, 60 F.3d 1249, 1256 (7th Cir. 1995)).

Attorney Pinix requests an hourly rate of $350 for himself and for Attorneys Soukup and Lawnicki. (Docket # 35 at 12, 35-2, 35-3.) Attorney Pinix asserts that he has significant experience in § 1983 litigation. (Docket # 37 ¶ 8.) Attorney Pinix submitted affidavits from Attorneys Christopher Donovan and Eric M. Knobloch for comparison. (Docket # 37-1, 37-2.) Attorney Donovan's years of experience, experience with litigating cases under § 1983, firm size and focus, and fee base are similar to those of Attorney Pinix, so he is a useful comparator. (Docket # 37 ¶¶ 3–9, Docket #37-1 ¶¶ 2–6.) Donovan avers that the requested rate of $350 is in line with what is normally charged by other practitioners for similar services. (Docket # 37-1 ¶ 7.)

Because the defendant has not appeared, he has by default not demonstrated why a lower rate than the requested rate is necessary. Such a failing "is essentially a concession that the attorney's billing rate is reasonable and should be awarded." *Bellamy v. City of Chicago*, No. 15 C 02678, 2017 WL 3675729, at *3 (N.D. Ill. Aug. 25, 2017) (quoting *People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 90 F.3d 1307, 1313 (7th Cir. 1996)). Thus, I find the hourly rate of $350 for Attorney Pinix reasonable.

However, I will slightly adjust the hourly rate for Attorneys Lawnicki and Soukup. According to his fee agreement with Kelty, Attorney Pinix's time is billed at $350 per hour and time for "other attorneys in the office" is billed at $295 per hour. (Docket # 35-1 at V(B)(3).) Although the fee agreement is only used as a guide, it is useful in considering the reasonableness of the requested hourly rate. *See Anderson v. MSI Preferred Ins. Co.*, 2005 WI 62, ¶¶ 3, 41, 281 Wis. 2d 66, 697 N.W.2d 73 (noting that under Wisconsin law, the fee arrangement is "to be used only as a guide when calculating reasonable attorney fees"). Consistent with the lower rate in the fee agreement is the fact that Attorneys Lawnicki and Soukup do not have the same level of experience Pinix has in litigating § 1983 cases. (Docket

# 37 ¶¶ 11, 14.) Thus, I find an hourly rate of $295 per hour reasonable for Attorneys Lawnicki and Soukup.

## 2.3. The Lodestar

For the reasons above, I calculate the lodestar as $16,340. This includes 45 hours at a rate of $350 per hour for Attorney Pinix, 1.1 hours at a rate of $295 per hour for Attorney Soukup, and 0.9 hours at a rate of $295 per hour for Attorney Lawnicki.

### 3. *Adjustments to the Lodestar*

There is a strong presumption that the lodestar represents the reasonable attorney's fee. *Pickett*, 664 F.3d at 639. However, the court may still adjust the fee upward or downward based on the *Hensley* factors, the most important of which is the degree of success obtained. *Hensley*, 461 U.S. at 430 n.3, 436. "A plaintiff who achieves 'excellent results' should receive the entire lodestar, but where 'a plaintiff has achieved only partial or limited success,' the lodestar 'may be an excessive amount.'" *Montanez*, 755 F.3d at 556 (quoting *Hensley*, 461 U.S. at 435–36).

Here, Kelty fully prevailed in her claim against Patterson. She secured an entry of default and a recommendation for a default judgment against Patterson, as well as a recommended award of $900,000 in compensatory damages and $1,500,000 in punitive damages. Although the damages Kelty sought were much higher, I do not find that the difference warrants a downward adjustment to the lodestar. This difference is not due to any deficiency on the part of Attorney Pinix, but to the inherently difficult nature of monetizing the kind of harm at issue in this case. In other words, it is unlikely that Attorney Pinix could have litigated the case in a way that would have resulted in a higher damages recommendation for Kelty.

I also find that no upward adjustment is warranted. The case did not present particularly complex or novel legal questions; in fact, it was unusually simple given that Patterson did not appear or offer any defense. The greatest difficulty in this case was assigning a monetary amount to the harm Patterson caused Kelty, but this was difficult not because it was a complex or novel legal issue, but because assigning damages amounts for such harm is inherently difficult.

The only adjustment I find warranted is a small downward adjustment to avoid double-billing. According to Kelty's fee agreement, Kelty was required to pay "$2,500 for the attorneys' time spent performing services pursuant this contract" before the "commencement of representation." (Docket # 35-1 at V(B)(1).) This amount does not appear to have been subtracted from the fees Attorney Pinix has requested. (Docket # 35-2 at 2, Docket # 35-3 at 2.) Thus, I will reduce the lodestar amount to reflect this prepayment of attorneys' fees and recommend that the attorneys be awarded $13,840 in fees.

  4. Costs

Attorney Pinix seeks $73.77 in expenses (Docket # 35-4, 35-5, 35-6), a number that seems to have accounted for the $1,000 for out-of-pocket litigation expenses already received from Kelty. (Docket # 35-1 at V(A)(1).) While I can recommend assessed costs in the first instance, 28 U.S.C. § 1920; Fed. R. Civ. P. 54(d)(1), it is the practice in this district to first seek relief from the Clerk of Court pursuant to Civil L.R. 54 (E.D. Wis.). *Strohbehn v. Weltman Weinberg & Reis Co. LPA*, No. 16-CV-985-JPS, 2018 WL 1997989, at *7 (E.D. Wis. Apr. 27, 2018). Should the parties seek review of the Clerk of Court's determination, they may do so pursuant to Civil L.R. 54(c).

**IT IS THEREFORE RECOMMENDED** that Kelty be **AWARDED** $13,840 in attorneys' fees.

A party may serve and file objections to this order within fourteen days of being served with the order. *See* Fed. R. Civ. P. 72(a). The district judge will consider a timely objection and will modify or set aside this order or any part of this order only if it is clearly erroneous or contrary to law.

Dated at Milwaukee, Wisconsin, this 3rd day of July, 2019.

**BY THE COURT:**

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge